**PETERSON PLUMBING SUPPLY, a Utah corporation, Plaintiff and Appellant,**

v.

**Jeffery H. BERNSON, Steven B. Terry and Robert F. Babcock, General Partners of Vescor Financial Services, also doing business as Regency Apartments, and Gene Bowers, dba Bowers Construction, Defendants and Appellees.**

No. 880667–CA.

Court of Appeals of Utah.

Aug. 31, 1990.

Richard K. Chamberlain (argued), Olsen, McIff & Chamberlain, Richfield, for plaintiff and appellant.

Steven D. Crawley (argued), Robert F. Babcock, Walstad & Babcock, Salt Lake City, for defendants and appellees.

Before DAVIDSON, GREENWOOD and ORME, JJ.

OPINION

GREENWOOD, Judge:

Appellant Peterson Plumbing Supply, Inc. (PPS) appeals the trial court's dismissal of its action against appellees Jeffery H. Bernson, Steven B. Terry, and Robert F. Babcock for issuing a fraudulent check under Utah Code Ann. § 7–15–1 (1982). We affirm.

Eugene Bowers, president of Bowers Building and Construction Co. (BBC), con-

tracted for the construction of an apartment complex in Salt Lake County. BBC subcontracted the plumbing work to Horace Lloyd, who purchased plumbing materials from PPS commencing in June 1983 to August 1984. Lloyd failed to pay PPS for all of the materials furnished for the construction project.

On December 31, 1984, Bowers sold the project to Regency Apartments, Ltd. (Regency). Bernson, Terry, and Babcock were general partners in Vescor Financial Group, which was the general partner of Regency. Bernson was the only limited partner in Regency.

On the same day that Regency purchased the project from Bowers, it sold the project to Wilshire Utah I Ltd., which failed to make payments to the first mortgage holder, American Savings and Loan, as well as to Bowers and Regency. Wilshire eventually filed for bankruptcy and American Savings foreclosed on the property.

Regency then entered into an arrangement with Bowers whereby Regency would negotiate a settlement with the ten creditors of the project, including PPS, for which Regency would receive credit against the sum it owed to Bowers equal to the full amount due each creditor. All of the creditors except PPS negotiated a settlement with Regency.

PPS received a check from Regency dated May 15, 1985, in the amount of $13,750, an arbitrary figure offered by Regency to settle PPS's claim of approximately $19,000. The check contained a restrictive endorsement that PPS, by endorsing the check, would be releasing any and all claims it might have against Bowers and/or the property. The endorsement stated:

Endorsement hereby releases any claims for further payments of any and all outstanding Invoices to either Bowers Construction, Eugene Bowers, Vescor Financial Group or any future assignee. In consideration of this payment Peterson Plumbing Supply and/or Don Peterson agree that all payments concerning bills for supplies and/or work done on the

Regency Apartments ... is paid in full accordance [sic] satisfaction. Endorsement also constitutes a full and complete waiver of any and all lien rights as pertaining to the above mentioned properties and parties.

After receiving the check, Don Peterson, PPS's owner, told Bernson and Babcock in separate telephone calls that PPS was unwilling to accept the amount offered by the check. Peterson asked for more money, but was told that no more would be offered. A week later, Bernson again discussed the matter with Peterson, who again rejected the offer. Bernson then told Peterson that the offer was withdrawn and asked Peterson to return the check. Peterson failed to return the check. Funds in the account upon which the check was drawn were subsequently transferred to another account.

Six weeks later, PPS deposited the check. The check did not clear when presented to the bank for payment. Subsequently, PPS brought suit against appellees and Bowers. The trial court entered judgment on a quantum meruit theory against Bowers for $5,246, a sum calculated by adding the invoices produced at trial and deducting certain credits. The trial court, however, granted a directed verdict in favor of appellees dismissing PPS's action against them based on a third party beneficiary theory and on their alleged civil liability under Utah's bad check statute, Utah Code Ann. § 7-15-1 (1982). PPS appeals the trial court's directed verdict in favor of appellees on the bad check issue only.

On appeal, PPS claims the trial court erred in determining that the $13,750 check was not given for value under section 7-15-1. On review, we accord the trial court's conclusions of law no particular deference, but review them for correctness. *Bountiful v. Riley*, 784 P.2d 1174, 1175 (Utah 1989); *Smith v. Smith*, 793 P.2d 407, 409 (Utah Ct.App.1990).

Section 7-15-1 states in pertinent part (with our emphasis):

(1) Any person who makes, draws, signs or issues any check, draft, order, or other instrument upon any depository institu-

tion, whether as corporate agent or otherwise, *for the purpose of obtaining from any person, firm, partnership or corporation any money, merchandise, property or other thing of value* or paying for any service, wages, salary or rent, which check, draft, order, or other instrument is not honored upon presentment and is marked "refer to maker" or the account with the depository upon which the check, draft, order, or other instrument has been made or drawn, does not exist, has been closed or does not have sufficient funds or sufficient credit with such depository for payment of the check, draft, or other instrument in full, shall be liable to the holder thereof.

The Utah Supreme Court recently construed section 7–15–1 "to require that the signator of a bad check personally receive benefits, services, or money transfer or, in the alternative, have actual knowledge that the check is drawn on insufficient funds in order to be held liable." *Mountain States Tel. & Tel. Co. v. Payne*, 782 P.2d 464, 467 (Utah 1989).

■ The trial court found that nothing of value had been obtained by Regency from PPS in exchange for the presentment of the check. No goods were obtained from PPS in exchange for the check; the items of value, the plumbing materials, were supplied earlier, on behalf of and at the request of Bowers.

We reject PPS's contention that the trial court erred in finding that the check was not given for value under section 7–15–1. Pivotal to our analysis is the fact that PPS flatly rejected appellees' offer to enter into an accord and satisfaction. PPS's belated attempt to negotiate the check six weeks after it had rejected Regency's offer and subsequent withdrawal of the offer did not constitute an acceptance. Having rejected an offer, an offeree cannot revive it by later tendering acceptance. *Burton v. Coombs*, 557 P.2d 148, 149 (Utah 1976).

PPS first argues that the check constituted payment for an antecedent debt and that the trial court mistakenly applied the criminal bad check statute's alleged mandate that a check issued for payment of an antecedent debt is not a "thing of value." [1] PPS contends that section 7–15–1 should instead be read in light of Utah Code Ann. §§ 70A–3–303 and –403 (1980) of the Uniform Commercial Code, to support its position that a negotiable instrument is given for value when given for payment of an antecedent obligation.

We agree that where possible, section 7–15–1 should be construed to be consistent with the Uniform Commercial Code. *See Mountain States Tel. & Tel. Co.*, 782 P.2d at 467. In this case, however, we need not determine whether the payment of an antecedent debt qualifies as a "thing of value" under section 7–15–1 since, because PPS rejected appellees' offer to enter into an accord and satisfaction, the debt was never satisfied. Further, PPS does not dispute the trial court's finding that no other defendant, besides Bowers, contracted to pay outstanding obligations of Bowers to materialmen on the project. Thus, even if the debt were satisfied, since the debt was Bowers', Regency would not have received anything of value solely as a result of the debt's satisfaction.

PPS next contends that the check was given "for value" under section 7–15–1 in that it purchased credit towards the contract between Regency and Bowers. Again, we disagree. Because PPS rejected appellees' offer, Regency did not obtain any credit towards their contract with Bowers and thus did not receive anything of value nor any benefit.

Finally, PPS asserts that the check was given "for value" to release a potential lien. However, because PPS failed to file a lien within eighty days of supplying its last materials in August 1984, it had no mechanic's lien rights to relinquish in May

---

**1.** Utah Code Ann. § 76–6–505 (1990). PPS does not provide any meaningful explanation for the hypothesized mandate.

1985 when the check was presented. *See* Utah Code Ann. § 38–1–7 (1988).

We conclude that the trial court did not err in determining that under section 7–15–1, Regency was not liable for the $13,750 check it gave to PPS. Regency simply made an offer to PPS for accord and satisfaction of a third party's obligation to PPS.[2] PPS rejected the offer, and, consequently, Regency did not obtain anything of value from PPS.

Affirmed.

DAVIDSON and ORME, JJ., concur.

---

**2.** PPS conceded at oral argument that if Regency had stopped payment on the check, which it had a right to do, there would clearly be no liability under section 7–15–1.